1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GERARDO CUEVAS,                              No.  2:15-cv-2361 DB P

12                    Petitioner,

13          v.                                    ORDER

14   JEFFREY BEARD,

15                    Respondent.

16

17          Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a

18   writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

19   entered against him on February 7, 2011 in the San Joaquin County Superior Court on counts of

20   lewd and lascivious acts on a child under the age of fourteen.  He seeks federal habeas relief on

21   the grounds that the trial court erred when it: (1) admitted evidence of petitioner's prior

22   uncharged crimes, and (2) instructed the jury with CALCRIM No. 318 on the use of a witness's

23   pretrial statements.  Both parties have consented to the jurisdiction of a magistrate judge.

24          Upon careful consideration of the record and the applicable law, the undersigned will

25   deny petitioner's application for habeas corpus relief.

26   ////

27   ////

28   ////

                                                    1

**BACKGROUND**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> 33–year–old Robert Wolfe, a friend of defendant's, was regularly having sex with 13–year–old Jane Doe. Wolfe introduced Doe to defendant. Defendant was approximately 32 years old when he met Doe. Doe testified to seven sexual encounters with defendant.
>
> The first encounter occurred at defendant's apartment. Wolfe directed Doe into defendant's bedroom and told her to disrobe. Both men lay on the bed wearing only their shirts. Doe had intercourse with Wolfe while defendant lay next to them. After Wolfe finished and left the room, defendant had intercourse with Doe from behind. Then Wolfe reentered the room and orally copulated defendant. Doe had not wanted to have sex with defendant; she did not care about him and only had sex with him to please Wolfe.
>
> The second encounter occurred a couple of months later in Wolfe's apartment. Defendant was there to smoke marijuana with Wolfe and Doe. Wolfe brought out pornographic magazines and played pornography on his computer and television. Defendant pushed Doe into the kitchen, pulled down her pants, and had intercourse with her from behind. Wolfe pointed a digital camera at them, but Doe did not know if he was actually taking pictures.
>
> The third encounter took place at defendant's apartment. Wolfe, Doe, and defendant were on defendant's couch. Doe orally copulated Wolfe while defendant had intercourse with Doe from behind. There was a video camera on a coffee table in the room pointed at the three of them. Doe believed the camera was running because the camera's light was on. Doe went into the bathroom to clean herself. As she left the bathroom, she saw defendant shredding the video tape from the video camera in a paper shredder.
>
> The fourth encounter occurred when defendant was driving Doe home. Defendant pulled into a parking lot. He wanted to have sex with her, but she did not. She orally copulated him instead.
>
> The fifth encounter occurred in defendant's apartment. Wolfe and his wife had moved into the apartment in December 2006, and Doe would spend the night there on occasion. One night, defendant came home from work while on break. Doe was sleeping on the couch. Defendant woke her and had sex with her. Doe said the incident "kind of felt like rape.... I didn't want it to happen and I was sleeping. It just didn't feel right to me." Doe did not do anything to stop defendant because she was afraid of saying no.
>
> The sixth encounter occurred on another night when Doe was staying at defendant's apartment with Wolfe and his wife. Doe went into defendant's bedroom to ask him for some headache medicine.

Defendant awoke and forced her into his bathroom. He pushed her face first against the wall. He pulled her pants down a little bit. She felt his penis against her. She was able to get away, and she ran out of the bathroom.

The seventh incident took place at a house to which defendant had moved. Wolfe took Doe to the house. They went into defendant's bedroom, and both Wolfe and defendant had intercourse with her.

Doe testified she was high on drugs every time she had sex with Wolfe and defendant.[fn 1]

Pursuant to Evidence Code section 1108, the prosecution presented evidence of defendant's prior sexual relationships with two teenage girls. G.C. was 14 years old and defendant was 17 years old when they met. They began dating when she was 15. At 16, she became pregnant with defendant's child. The child was born in 1994.

M.R. met defendant when she was 15 years old, and he was 21 years old. At 16, she became pregnant with defendant's child. The child was born in 1997.

[fn 1] Wolfe pleaded guilty to molestation charges. He testified for the prosecution.

People v. Cuevas, No. C067437, 2014 WL 2211860, at *1-2 (Cal. Ct. App. 2014).[1]

## PROCEDURAL HISTORY

The Court of Appeal set out the procedural history of the case in the trial court:

The trial court declared a mistrial in defendant's first trial, as the jury was unable to reach a verdict. In the second trial, the jury convicted defendant of three counts of committing lewd and lascivious acts on a child under the age of 14 years (Pen.Code, § 288, subd. (a)), and found true the allegations that defendant engaged in substantial sexual conduct with a child under the age of 14. (Pen.Code, § 1203.066, subd. (a)(8).) It acquitted defendant of an additional count of lewd and lascivious acts on a child and a count of using a minor under the age of 14 to perform an obscene act. (Pen.Code, § 311.4, subd. (c).)

The trial court sentenced defendant to a state prison term of 12 years, calculated as follows: the upper term of eight years on one of the lewd conduct counts, plus consecutive two years for each of the remaining lewd conduct counts.

Id. at *2.

---

[1] A copy of the opinion of the Court of Appeal can also be found attached to the Answer as Exhibit A. (ECF No. 12 at 28-32.)

In his appeal, petitioner argued the trial court erred when it (1) admitted evidence of petitioner's prior uncharged crimes, and (2) instructed the jury with CALCRIM No. 318 on the use of a witness's pretrial statements. (AOB (LD 1).[2]) The Court of Appeal rejected those claims. Cuevas, 2014 WL 2211860. Petitioner filed a petition for review with the California Supreme Court in which he asserted the same two claims. (LD 5.) The California Supreme Court denied review. (LD 6.)

## STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011)

---

[2] Respondent lodged copies of records from the state trial and appellate proceedings. (See Notice of Lodging (ECF No. 13).) Lodged documents are identified by the lodging number assigned them by respondent as "LD." The record of the trial transcript is "RT;" the augmented record of transcript is "ART;" the clerk's transcript is "CT;" petitioner's opening brief on appeal is "AOB;" respondent's brief on appeal is "RB;" and petitioner's reply brief is "ARB."

(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'"  <u>Stanley</u>, 633 F.3d at 859 (quoting <u>Maxwell v. Roe</u>, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  <u>Marshall v. Rodgers</u>, 133 S. Ct. 1446, 1450 (2013) (citing <u>Parker v. Matthews</u>, 567 U.S. 37 (2012)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct."  <u>Id.</u> at 1451.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue.  <u>Carey v. Musladin</u>, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003) (quoting <u>Williams</u>, 529 U.S. at 405-06).  "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'"  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (quoting <u>Williams</u>, 529 U.S. at 413); <u>Chia v. Cambra</u>, 360 F.3d 997, 1002 (9th Cir. 2004).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Williams</u>, 529 U.S. at 411; <u>see also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Lockyer</u>, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

////

5

Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)). If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not

6

grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").  For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding.  See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'"  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

A summary denial is presumed to be a denial on the merits of the petitioner's claims.  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively

unreasonable." Himes, 336 F.3d at 853 (citing Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000)). This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." Richter, 562 U.S. at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

## PETITIONER'S CLAIMS

Petitioner raises two claims in his habeas petition here. First, he contends that admission of evidence of other uncharged crimes under California Evidence Code § 1108 violated his due process and equal protection rights. He further argues that § 1108 is unconstitutional. Second, petitioner claims jury instruction CALCRIM No. 318, regarding the use of a witness's prior statements as evidence, violated his due process rights to a fair trial.[3] Each claim is addressed below.

### I.     Admission of Evidence of Prior Uncharged Crimes

Petitioner argues that the prior uncharged acts were so dissimilar from the crimes at issue that they were not probative and were unduly prejudicial. Specifically, petitioner points out that the prior acts occurred when he was much younger and the girls involved were near his age. In addition, the amount of time that had passed since those prior acts contributed to their lack of probative value. (Pet. for Review (LD 5) at 5-8.) Petitioner further argues that California Evidence Code § 1108 is unconstitutional. Section 1108 permits the introduction of evidence of

---

[3] Petitioner did not submit argument on his claims in his petition. Because the court must construe pro se pleadings liberally, the court looks to petitioner's briefs on appeal and his petition for review to determine his arguments.

prior sexual offenses in a trial for a sexual offense so long as the probative value of the evidence outweighs its potential for prejudice under California Evidence Code § 352.[4]

### A. Factual Background

The prosecution presented the testimony of two women who had sexual relationships with petitioner when they were minors. First, G.C. testified that in 1993 when she was fifteen years old and petitioner was eighteen years old, they had a sexual relationship that resulted in a pregnancy. When she was sixteen and he was nineteen, G.C. gave birth to a son. (RT 170-171.) She testified that when she started dating petitioner, he was out of high school. (RT 174.) Second, M.R. testified that she met petitioner in early 1996 when she was fifteen years old and he was twenty-one. (RT 176-177.) They began dating shortly before she turned sixteen and she became pregnant. (RT 177.) Shortly after she turned seventeen, she gave birth to a son. (RT 178.)

The testimony of G.C. and M.R. was presented at petitioner's first and second trials. Petitioner objected to the evidence in proceedings prior to the first trial. The trial court held the evidence was admissible to bolster the credibility of the victim. (1 ART 29-30.) When the prosecution sought to introduce the evidence again at the second trial, defense counsel did not object, stating "We litigated it last time. It all came into evidence last time. I don't see a reason why it wouldn't come in this time." (RT 27.) The trial court ruled:

> We did hear from these young ladies last time. I'll admit the testimony under 352. We have the 1108. We have to balance out. It is the propensity. It is prejudicial but highly probative. We'll end up in a credibility contest as we did before between Maria and Mr. Cuevas. I think it's evidence that should be admitted into the case.
>
> Doing that, for the defense, I'll give a limiting instruction. Free to argue propensity evidence, the jury can consider it, give it weight,

---

[4] California Evidence Code § 352 states:

> The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

1    or it is up to them.  It is not lengthy evidence.  We're not talking ten
     hours of testimony from each witness.
2
         . . .
3
         It is brief.   It is not cumulative because they are separate
4        individuals.

5    (RT 28.)

6        Just before G.C. and M.R. testified at the second trial, the court gave the jury the

7    following advisement:

8        I'll read the law.  Reading this I'm not taking a position on this
         case.   If you wonder why the People are calling these two
9        witnesses, I'll read the law.  You'll hear them argue at the end of
         the case.  It puts it in context.  I'm not taking a position.
10
         Evidence of uncharged sex offenses.  It goes as follows:  Evidence
11       will be introduced, these two ladies coming in, for the purpose of
         showing the defendant engaged in sex offenses other than those
12       charged in this case.

13       The People are claiming sex with an underage minor, consensual
         situation; fair statement?
14
         [PROSECUTOR]:  Yes.
15
         THE COURT:  No force, duress, or threat.
16
         You may consider this evidence only if the People have proved by a
17       preponderance of the evidence that the defendant in fact committed
         the uncharged offenses.  Proof by a preponderance of the evidence
18       is a different burden of proof than burden of proof beyond a
         reasonable doubt.   A fact is proved by a preponderance of the
19       evidence if you conclude that it is more likely than not that the fact
         is true.
20
         If the People have not met this burden of proof, you must disregard
21       this evidence entirely.

22       The last paragraph is important as well.

23       If you decide that the defendant committed the uncharged offenses,
         their claim of sex with underage girls here, you may, but are not
24       required to, conclude from that evidence that the defendant was
         disposed or inclined to commit sex offenses, and based on that
25       decision also conclude that the defendant was likely to commit and
         did commit the offenses charged in this case, Counts One through
26       Five.  It's called propensity evidence.  If you conclude that the
         defendant committed the uncharged offenses, that conclusion is
27       only one factor to consider along with all the other evidence.  We
         haven't heard from the alleged victim.  It is not sufficient by itself,
28       meaning the testimony about prior sex with underage girls, if you

                                        10

believe it, that is not sufficient by itself to prove that the defendant is guilty of the offenses charged in this case. The People must still prove the charge in this case beyond a reasonable doubt. The People must still prove the elements charged in this case, Counts One through Five, beyond a reasonable doubt.

So in essence, in recapping, it is propensity evidence. You decide what weight to give to it. It is not evidence that proves in and of itself the five charges that we addressed here, but propensity evidence. If you think it is important, fine. If you don't think it is important, fine. Weigh it with the other evidence.

You'll get the instruction at the end. You'll have it, each of you, in writing in there.

Again, I take no position. If you're sitting there wondering what does this have to do with this situation, that is the People's argument; fair statement?

[PROSECUTOR]: Yes.

THE COURT: You do not have to agree with that position, nonetheless, we'll let the witnesses be called based on the law here.

(RT 167-169.)

During the closing jury instructions, the court again instructed the jury similarly, and at length, about limitations on considering the testimony of G.C. and M.R. (RT 1128-30.)

## B. Applicable Legal Standards

A federal writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 899 (1983)). Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991). Evidence must "'be of such quality as necessarily prevents a fair trial'" for its admission to violate due process. Id. (quoting Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986)).

Notwithstanding the above, the Ninth Circuit has observed that:

The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when

11

constitutional errors have rendered the trial fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court."  Id.

### C.  State Court Decision

Because the California Supreme Court denied review, the decision of the California Court of Appeal is the last reasoned decision of a state court.  The court held:

In defendant's first trial, the prosecution by in limine motion sought to introduce evidence of defendant's prior sexual relationships with two underage girls, G.C. and M.R. Defense counsel opposed the motion, arguing the evidence would confuse the issues and was too dissimilar to the facts in the current case. The trial court ruled the evidence was admissible under Evidence Code section 1108 (section 1108), finding its probative value outweighed its prejudicial effect.

During defendant's retrial, the prosecution again sought to introduce the section 1108 evidence. Defense counsel did not object. He stated that because the evidence was admitted in the first trial, he did not see a reason why the evidence would not be admitted in the retrial. The court admitted the evidence.

Defendant contends the court erred by admitting the evidence. He argues the prejudicial effect of the evidence outweighed its probative value because the uncharged conduct was too dissimilar and remote to be probative of his propensity to commit the charged offenses. He also asserts section 1108 is unconstitutional. We disagree with his contentions.

Initially, we discuss forfeiture, an issue neither side raised. Defendant did not object to introduction of the section 1108 evidence at his second trial, following mistrial in his first trial. This omission of an objection forfeits his claim here. As with a new trial, when a mistrial is called, according to long-held precedent, the parties are placed in the same position as if the first trial had never occurred. (*See* Pen.Code, § 1180.) "A mistrial is equivalent to no trial." (*In re Alpine* (1928) 203 Cal. 731, 743, *disapproved on another ground in Sykes v. Superior Court* (1973) 9 Cal.3d 83, 90, fn. 7.) It was thus incumbent on defendant to object to the admission of the section 1108 evidence, even though it had been admitted in the first trial, if he intended to challenge the admission on appeal. His failure to do so forfeits his claim here.

12

Even if defendant had objected at trial, we still would find the court did not err by admitting the evidence. Under section 1108, a court in a criminal sex offense trial may admit evidence of other uncharged sex offenses committed by defendant if the evidence is not unduly prejudicial under Evidence Code section 352. (§ 1108, subd. (a).)

"By reason of section 1108, trial courts may no longer deem 'propensity' evidence unduly prejudicial per se, but must engage in a careful weighing process under [Evidence Code] section 352. Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (*People v. Falsetta* (1999) 21 Cal.4th 903, 916–917.)

We review a trial court's ruling under section 1108 for abuse of discretion. (*People v. Loy* (2011) 52 Cal.4th 46, 61.)

We find no abuse of discretion here. Defendant's prior offenses were sufficiently similar to the charged offenses. The uncharged offenses need not be identical to the charged offenses in order to be admissible. "It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 41, fn. omitted, *disapproved on another ground in People v. Loy, supra,* 52 Cal.4th at pp. 73–74.) Defendant's charged and uncharged offenses are defined in section 1108 as sex offenses that trigger the statute's provisions. (§ 1108, subd. (d).) And the acts were in fact similar. In both the charged and uncharged offenses, defendant engaged in consensual sexual intercourse with minors as an adult, and did so regardless of his age.

Defendant's prior offenses were not remote from the charged offenses. "No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible.... [¶] Remoteness of prior offenses relates to 'the question of predisposition to commit the charged sexual offenses.' [Citation.] In theory, a substantial gap between the prior offenses and the charged offenses means that it is less likely that the defendant had the propensity to commit the charged offenses. However, ... significant similarities between the prior and the charged offenses may 'balance[ ] out the remoteness.' [Citation.] Put differently, if the prior offenses are very similar in nature to the charged offenses, the prior offenses have greater probative value in proving propensity to commit the charged offenses." (*People v. Branch* (2001) 91 Cal.App.4th 274, 284–285.)

The similarity between defendant's charged and uncharged offenses outweighs any remoteness between the two sets of acts. Despite the passage of 10 and 13 years since his sexual relations with G.C. and M.R., defendant again engaged in sexual intercourse with a minor. In addition, the gap of 10 and 13 years is less remote than gaps of time in other cases that were found not to be remote. (*See, e.g., People v. Frazier, supra,* 89 Cal.App.4th at p. 41 [15–or 16–year gap]; *People v. Soto* (1998) 64 Cal.App.4th 966, 977, 991–992 [more than a 20–year gap].)

Moreover, the uncharged crimes evidence was probative. The evidence bolstered Doe's testimony and credibility from independent and unrelated sources by showing defendant's propensity to engage in sex with minors. Receiving the evidence did not unduly consume the court's time. And the evidence was not inflammatory in light of the charged crimes.

Had the trial court been given the opportunity in the second trial to weigh the evidence's probative value against its prejudicial effect, we have no doubt it would have relied upon these and other factors and found the evidence admissible under section 1108.

Defendant contends section 1108 is unconstitutional. Our Supreme Court has rejected his argument. (*People v. Falsetta, supra,* 21 Cal.4th at p. 915.) We are bound by this ruling (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and thus will not address defendant's contention.

Cuevas, 2014 WL 2211860, at *2-4. Below, the court finds that the Court of Appeal's

determination was not contrary to, or an unreasonable application of, clearly established federal

law.

### D.   Analysis of Admission of Evidence of Prior Uncharged Crimes

The testimony of G.C. and M.R. was admitted pursuant to California Evidence Code §

1108(a) which provides:

In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.

The Court of Appeal initially rejected petitioner's claim because it found the claim waived by

counsel's failure to object to the evidence at the second trial.  The state court went on, however,

to address the merits and find admission of the testimony appropriate.

As a general rule, "[a] federal habeas court will not review a claim rejected by a state court 'if

the decision of [the state] court rests on a state law ground that is independent of the federal

14

question and adequate to support the judgment." Walker v. Martin, 562 U.S. 307, 315 (2011) (quoting Beard v. Kindler, 558 U.S. 53, 55 (2009)); see also Maples v. Thomas, 565 U.S. 266, 280 (2012). However, a reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim. See Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same."); Ayala v. Chappell, 829 F.3d 1081, 1096 (9th Cir. 2016) (citing Franklin, 290 F.3d at 1232). Thus, where deciding the merits of a claim proves to be less complicated and time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claim on its merits and forgo an analysis of procedural default.

Under the circumstances presented here, this court finds that petitioner's claims of error in the admission of evidence can be resolved by addressing them on the merits.

### 1. Due Process Claim

In Holley, the Ninth Circuit noted that the Supreme Court has not made a clear ruling that the admission of "irrelevant or overtly prejudicial evidence" violates due process. Pursuant to this binding authority, the state appellate court's rejection of petitioner's due process claim here does not support the granting of federal habeas relief because a California trial court's admission of evidence pursuant to California Evidence Code § 1108 to show propensity does not violate any principle of clearly established federal law. 568 F.3d at 1101.

More specifically, the United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003).

In fact, the Supreme Court has expressly left open this question. See Estelle v. McGuire, 502 U.S. 62, 75 n. 5 (1991) ("Because we need not reach the issue, we express no opinion on

15

whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"); see also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that the state court's determination that the propensity evidence introduced against the defendant at trial did not violate his right to due process was not objectively unreasonable); Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006) (denying the petitioner's claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA"); United States v. LeMay, 260 F.3d 1018, 1024-27 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of evidence of similar crimes in child molestation cases, under which the test for balancing probative value and prejudicial effect remains applicable, does not violate due process). Accordingly, the state court's rejection of petitioner's contention that the admission of the challenged evidence violated his right to due process is not contrary to clearly established United States Supreme Court authority. See 28 U.S.C. § 2254(d).

Further, even considering the substance of plaintiff's claim, any error in admitting this challenged evidence did not have "a substantial and injurious effect or influence in determining the jury's verdict" for a number of reasons. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also Penry v. Johnson, 532 U.S. 782, 793-96 (2001). First, the record reflects that the state trial judge struck an appropriate balance between petitioner's rights and the clear intent of the California legislature that evidence of prior similar acts be admitted in domestic violence prosecutions. At both trials, the trial court considered the admissibility of petitioner's prior acts of sexual relationships with minors and concluded the evidence was relevant and that its admission was appropriate under California law. The trial court specifically concluded that the evidence with regard to those two incidents was not unduly prejudicial.

Second, petitioner had the opportunity at trial to cross-examine G.C. and M.R. Third, the prosecutor did not focus on the testimony of G.C. and M.R. in his closing argument. (See RT 999-1000, 1102, 1103.) The defense attorney attempted to put the evidence in perspective by arguing in closing that petitioner's high school relationships should not be used to show he

engaged in child molestation generally.  (RT 1079-80.)  The attorney argued that the evidence was "nothing but an attempt to get you folks to turn against [petitioner] because of his lifestyle." (RT 1080.)

Finally, the evidence did not have an impact on the verdict because jurors at petitioner's trial were instructed twice, once before hearing the evidence and again at the close of all evidence, that if they found petitioner had committed an uncharged act of sexual contact with a minor they could, but were not required to, infer that he had a disposition to engage in sexual relationships with minors and that he was likely to have committed the charged offenses.  (See RT 167-69; 1128-30.)  These instructions did not compel the jury to draw an inference of propensity; they simply allowed it.

Finally, the jury was directed that evidence that petitioner committed prior sexual acts with minors was not sufficient by itself to prove that he was guilty of the charged offenses.  (RT 1130.)  In addition, the jury instructions correctly informed petitioner's jury that the prosecution had the burden of proving all elements of the crimes against petitioner beyond a reasonable doubt. (RT 1113-14.)  Although the prior crimes evidence was potentially powerful, "[the fact] that prior acts evidence is inflammatory is not dispositive in and of itself."  LeMay, 260 F.3d at 1030.

The admission of petitioner's prior acts of sexual contact with minors did not violate any right clearly established by federal precedent or result in prejudice under the circumstances of this case.  Accordingly, petitioner is not entitled to federal habeas relief with respect to his due process claim based upon the alleged improper admission of evidence regarding his prior acts of sexual contact with minors.  For the same reasons, petitioner's claim that § 1108 violates due process fails.

### 2.  Equal Protection Claim

Petitioner also claims the introduction of his prior acts of sexual conduct with minors pursuant to California Evidence Code § 1108 violated his rights under the Equal Protection Clause.  The Equal Protection Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."  Vacco v. Quill, 521 U.S. 793, 799 (1997) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982) and Tigner v. Texas, 310 U.S. 141, 147 (1940)). The

17

Fourteenth Amendment "guarantees equal laws, not equal results." <u>McQueary v. Blodgett</u>, 924 F.2d 829, 835 (9th Cir. 1991) (quoting <u>Personnel Adm'r v. Feeney</u>, 442 U.S. 256, 273 (1979)). "[L]egislation may impose special burdens upon defined classes in order to achieve permissible ends." <u>Estelle v. Dorrough</u>, 420 U.S. 534, 539 (1975). However, the Equal Protection Clause "does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.'" <u>Id.</u> A habeas petitioner has the burden of alleging facts sufficient to establish "a prima facie case of uneven application." <u>McQueary</u>, 924 F.2d at 835. "[A] mere demonstration of inequality is not enough . . . There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises." <u>Id.</u>

In <u>LeMay</u>, the Ninth Circuit held that Federal Rule of Evidence 414 (allowing evidence of similar crimes in child-molestation cases) did not violate the Equal Protection Clause because it did not discriminate against any group of individuals on the basis of a suspect or quasi-suspect class and did not infringe on a fundamental right. 260 F.3d at 1030 (defendants have "no fundamental right to have a trial free from relevant propensity evidence that is not unduly prejudicial"). Thus, according to the Ninth Circuit, the rule was constitutional so long as it bore a "reasonable relationship to a legitimate government interest." <u>Id.</u> at 1031. The court observed that Rule 414 allowed prosecutors to introduce relevant evidence in furtherance of the legitimate government interest of prosecuting and convicting sex offenders. <u>Id.</u> On this basis the court found the equal protection challenge to Rule 414 to be without merit. <u>Id.</u> Because Rule 414 is essentially the same as Evidence Code § 1108, <u>LeMay</u> dictates denial of petitioner's equal protection claim.

Petitioner has not demonstrated that the state court decision rejecting his equal protection challenge to § 1108 was contrary to or an unreasonable application of federal law. Accordingly, he is not entitled to habeas relief on that claim.

**II.      Jury Instruction re Consideration of Witness's Pretrial Statement**

Petitioner's second claim is that jury instruction CALCRIM 318 violates due process. Pursuant to CALCRIM 318, the court instructed the jury that if it determined a witness made a

18

statement before trial, it may use the statement both to evaluate the witness's testimony in court and as evidence that the information in the pretrial statement was true.   (RT 1123-24.[5])

Petitioner contends the instruction lightened the prosecutor's burden of proof because the instruction told the jury to consider a witness's pretrial statement believable because it was made.

### A.   Applicable Legal Standards

In general, a challenge to jury instructions does not state a federal constitutional claim. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Engle v. Isaac, 456 U.S. 107, 119 (1982); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  To warrant federal habeas relief, a challenged jury instruction cannot be "merely . . . undesirable, erroneous, or even 'universally condemned,'" but must violate "some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973); see also Estelle, 502 U.S. at 72 (holding that to find constitutional error, there must be a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution" (quoting Boyde v. California, 494 U.S. 370, 380 (1990))); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so infected the entire trial that the resulting conviction violates due process.'"  Prantil v. California, 843 F.2d 314, 317 (9th Cir.1988) (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987)); see also Middleton v. McNeil, 541 U.S. 433, 437 (2004) ("If the charge as a whole is ambiguous, the question is whether there 'is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." (quoting Estelle, 502 U.S. at 72)); Henderson v. Kibbe, 431 U.S. 145, 156–57 (1977).  In making this determination, the challenged

---

[5] The full instruction read to the jury was as follows:

> You have heard evidence of statements that a witness made before the trial.  If you decide that the witness made those statements, you may use the statement in two ways:

> One, to evaluate whether the witness's testimony in court is believable;

> And two, as evidence that the information in those earlier statements were [sic] true.

jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147); see also Prantil, 843 F.2d at 317 (The habeas court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'" (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984))).

Even if constitutional instructional error has occurred, a petitioner is not entitled to federal habeas relief unless the error "in the whole context of the particular case, had a substantial and injurious effect or influence on the jury's verdict." Calderon v. Coleman, 525 U.S. 141, 147 (1998) (citing Brecht, 507 U.S. at 637-38; see also California v. Roy, 519 U.S. 2, 6 (1996); Cavitt v. Cullen, 728 F.3d 1000, 1010 (9th Cir. 2013).

**B.  State Court Decision**

> The trial court instructed the jury with CALCRIM No. 318, which addresses pretrial statements made by a witness. The instruction states that if the jury hears evidence of statements a witness made before trial, and if it determines the witness in fact made the pretrial statements, it may use the statements in two ways: (1) to evaluate whether the witness's testimony in court is believable; and (2) as evidence that the information in the pretrial statements is true.
>
> A court may use this instruction when a testifying witness has been confronted with a prior inconsistent statement. "CALCRIM No. 318 informed the jury that it could consider discrepancies between out-of-court statements and in-court testimony to decide that a
>
> witness's statements on the stand were not trustworthy." (*People v. Tuggles* (2009) 179 Cal.App.4th 339, 365.)
>
> Defendant contends the instruction violates his due process rights because it informed the jury Doe's pretrial statements were more likely to be true simply because she made them. We rejected this argument in *People v. Hudson* (2009) 175 Cal.App.4th 1025, and our reasoning in that case still applies. "CALCRIM No. 318 informs the jury that it may reject in-court testimony if it determines inconsistent out-of-court statements to be true. By stating that the jury 'may' use the out-of-court statements, the instruction does not require the jury to credit the earlier statements even while allowing it to do so. [Citation.] Thus, we reject defendant's argument that CALCRIM No. 318 lessens the prosecution's standard of proof by compelling the jury to accept the out-of-court statements as true." (*People v. Hudson*, *supra*, at p. 1028.)
>
> Defendant acknowledges the jury also received other instructions that would apply to the jury's understanding and application of

CALCRIM No. 318, but he claims the jury would not have "balanced instructions against each other to try to counteract the unambiguous language" of CALCRIM No. 318. We disagree with this contention. "[T]he ' "correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' [Citations.]" (*People v. Hudson*, *supra*, 175 Cal.App.4th at pp. 1028–1029.) And we presume the jury was able to follow all of the court's instructions. (*People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1190.)

The trial court provided other instructions which, when followed by the jury, ensured the jury applied CALCRIM No. 318 correctly. The court instructed the jury with CALCRIM No. 226, which instructed the jury it had to determine the credibility of each witness, and that it could accept or reject any testimony. The instruction told the jury that in making that determination, it could consider, among other matters, prior inconsistent statements. Thus the jury knew it had to determine the credibility of all statements made by a witness, including the witness's out-of-court statements. The court also instructed the jury with CALCRIM No. 220, which explained the prosecution's burden to prove defendant guilty beyond a reasonable doubt. As we said in People v. Hudson, supra, "[r]ead as a whole, the instructions did not lessen the prosecution's burden of proof by elevating out-of-court statements to unquestionable reliability." (175 Cal.App.4th at p. 1029.) CALCRIM No. 318 did not violate defendant's constitutional rights.[fn 2]

[fn 2] The Attorney General asserts defendant forfeited his challenge to CALCRIM No. 318 because he did not seek amplification or clarification of the instruction. We disagree. A defendant need not object to preserve a challenge to an instruction he claims incorrectly states the law to the

detriment of his substantial rights. (*People v. Tuggles*, *supra*, 179 Cal.App.4th at p. 364.)

Cuevas, 2014 WL 2211860, at *4-5. For the reasons set forth below, the court finds the Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established federal law.

**C. Analysis of Jury Instruction Claim**

Petitioner argues that the jury instruction creates a mandatory presumption that statements made in the earlier made statements are true. Petitioner's contention is refuted by the language of the jury instruction. Moreover, the jury instruction does not violate clearly established Supreme Court authority.

21

A jury instruction that reduces the level of proof necessary for the government to carry its burden "is plainly inconsistent with the constitutionally rooted presumption of innocence." <u>Cool v. United States</u>, 409 U.S. 100, 104 (1972). "All challenged instructions[, however,] must be considered in light of all of the jury instructions and the trial record as a whole." <u>Mendez v. Knowles</u>, 556 F.3d 757, 768 (9th Cir. 2009) (citing <u>Cupp</u>, 414 U.S. at 146–47.).

The finding by the California Court of Appeal that CALCRIM No. 318 did not violate petitioner's constitutional rights was not an unreasonable application of clearly established Supreme Court authority. As noted by the state appellate court, CALCRIM No. 318 does not compel the jury to accept out-of-court statements as true. The instruction tells the jury that it <u>may</u> use out-of-court statements to evaluate the credibility of a witness's in-court testimony and as evidence that the information in those earlier statements is true. CALCRIM No. 318 does not, as argued by petitioner, create a presumption of truthfulness of the out-of-court statements compared to trial testimony.

For these reasons, CALCRIM No. 318 did not reduce the level of proof necessary for the government to carry its burden. <u>See</u> <u>Humphrey v. Hill</u>, No. 2:12-cv-1494-JKS, 2014 WL 950468, at *13 (E.D. Cal. Mar. 11, 2014) ("CALCRIM No. 318 does not compel the jury to accept out-of-court statements as true, and does not reduce the level of proof necessary for the government to carry its burden."); <u>Casner v. Valenzuela</u>, No. 1:10-cv-01081-SKO-HC, 2013 WL 4041824, at *18 (E.D. Cal. Aug. 7, 2013) ("CALCRIM 318 did not by its terms compel the finder of fact to accept the out-of-court statements as true."); <u>Lewis v. California</u>, No. 2:11-cv-1444 KJN P, 2012 WL 487194, at *11 (E.D. Cal. Feb. 7, 2012) (CALCRIM No. 318 does not create a presumption that out-of-court statements are truthful), <u>findings and recos. adopted</u>, 2012 WL 968128 (E.D. Cal. Mar. 21, 2012).

**III.    CONCLUSION**

Petitioner has failed to establish that the decisions of the state courts rejecting his claims were contrary to, or an unreasonable application of, clearly established federal law or were an unreasonable interpretation of the facts. <u>See</u> 28 U.S.C. § 2254(d). Because petitioner fails to

////

satisfy any of the requirements of § 2254(d), petitioner's petition for a writ of habeas corpus will be denied.

## CERTIFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller–El v. Cockrell, 537 U.S. 322, 336 (2003). A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller–El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate should issue if the petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, or (2) jurists of reason would find it debatable whether the district court was correct in any procedural ruling. Slack, 529 U.S. at 483–84.

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. Id. An applicant must show more than an absence of frivolity or the existence of mere good faith; however, an applicant need not show the appeal will succeed. Miller–El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases. Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, the court will decline to issue a certificate of appealability.

In accordance with the foregoing analysis, it is HEREBY ORDERED that:

1.  The petition for writ of habeas corpus is DENIED;

2.  Judgment is entered for respondent; and

3.  The court declines to issue a certificate of appealability.

Dated:  June 28, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/cuev2361.fr